UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Laurie Melchondia [sic], on behalf of [MM(1)],[1] | § § § | |
| *Plaintiff,* | § § | Case No. 1:24-cv-10388-PBS |
| v. | § § | |
| MetLife Insurance Company [sic],[2] | § § | |
| *Defendant.* | § | |
| | | |
| Metropolitan Life Insurance Company, | § § | |
| *Counterclaim Plaintiff,* | § § | |
| v. | § § | Case No. 1:24-cv-10388-PBS |
| Laurie Melchionda, Individually, as representative of the Estate of William Melchionda, and as Next Friend to MM(1) and MM(2), | § § § § § | |
| *Counterclaim Defendant.* | § | |

---

**DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

---

Plaintiff Laurie Melchionda first claims that defendant Metropolitan Life Insurance

Company ("MetLife") breached an insurance contract by failing to pay *her* "two million dollars"

in life insurance benefits "on behalf of" her 17-year-old son (MM(1)) even though:  (a) no

guardian has been appointed to protect the funds until he reaches the age of majority in

September 2024; and (b) no determination has been made as to whether her 12-year-old son

(MM(2)) is entitled to any portion of the funds.  *See* Complaint, Count One.

---

[1] Plaintiff's surname is misspelled in her Complaint, and should be Melchionda.  Plaintiff named the minor children in her Complaint, but MetLife is identifying the minor children herein as MM(1) and MM(2) per Fed. R. Civ. P. 5.2(a)(3).

[2] Defendant's proper name is Metropolitan Life Insurance Company.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

Summary judgment should be granted in favor of MetLife with respect to Ms. Melchionda's breach of contract claim because, while MetLife does not dispute that the life insurance benefits are payable, it cannot safely determine the proper recipient or recipients of the benefits without exposing itself to multiple claims and duplicative liability, and, therefore, has properly sought to interplead the benefits. *See Equitable Life Assur. Society of the U.S. v. Porter-Englehart*, 867 F.2d 79, 84 (1st Cir. 1989) ("It is immaterial whether the stakeholder believes that all claims against the fund are meritorious. Indeed, in the usual case, at least one of the claims will be very tenuous. The threat of possible multiple litigation – not necessarily the likelihood of duplicative liability – justifies resort to interpleader").[3]

Moreover, as was explained to Ms. Melchionda *before* she commenced this action, MetLife cannot pay the life insurance benefits directly to a minor child or to anyone else on his behalf (even a parent) unless and until a guardian for the property or estate of the minor child has been appointed and has made a claim for the life insurance benefits, and, as Ms. Melchionda concedes, no such guardian has been appointed.[4]

Ms. Melchionda also asserts that MetLife "has acted in bad faith and engaged in unfair claims settlement practices" in violation of M.G.L. c. 93A. *See* Complaint, Count Two. A violation of M.G.L. c. 93A requires evidence of conduct by an insurer "rising to the level of

---

[3]In this regard, MetLife has filed a motion to deposit the life insurance benefits with the Court and to be dismissed and released from any and all liability of any kind or nature whatsoever regarding the policy and the life insurance benefits, which should resolve the breach of contract claim. ECF Doc. 17. *See Hudson Savings Bank v. Austin*, 479 F.3d 102, 107 (1st Cir. 2007) ("It follows that, in an interpleader action in which the stakeholder does not assert a claim to the stake, the stakeholder should be *dismissed immediately* following its deposit of the stake into the registry of the court. That dismissal should take place without awaiting an adjudication of the defendants' competing claims" (emphasis added)).

[4]On April 8, 2024, the Court ordered Ms. Melchionda to file a motion to appoint such a guardian by April 22, 2024 (ECF Doc. 15), but she failed to do so.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

intentional bad faith, calculated and knowing deception, extortionate tactics, or other similarly *egregious* conduct." *Cambridge Pub. Health Comm'n v. Commerce Ins. Co.*, 2020 Mass. App. Div. LEXIS 23, *12 (Mass. App. May 26, 2020) (emphasis added).

Summary judgment should be granted in favor of MetLife with respect to Ms. Melchionda's "unfair and deceptive business practices" claim because its actions with respect to the life insurance benefits at issue did not in any way entail "intentional bad faith, calculated and knowing deception, extortionate tactics, or other similarly egregious conduct."  To the contrary, MetLife conducted a reasonable, timely, and diligent investigation of the claim under the circumstances (even though, for example, it had to send Ms. Melchionda *six* letters and wait *eight* months before receiving a simple claim form and copy of the decedent's death certificate from her).  *See River Farm Realty Trust v. Farm Family Cas. Ins. Co.*, 943 F.3d 27, 36 (1st Cir. 2019) (the "boundaries of what are viable claims" for unfair claims settlement practices "are matters of law for the court to decide").

## STATEMENT OF MATERIAL FACTS

1. <u>The Policy</u>

This matter concerns life insurance benefits made available by a Group Term Life & Accidental Death and Dismemberment Insurance Policy (Group Policy No. 122749-2-G) issued by MetLife to The Commonwealth of Massachusetts Group Insurance Commission ("GIC") (the "Policy").  *See* Exhibit A (Certificate of Insurance).

As a government employee, William Melchionda (the "Decedent") was insured under the Policy, and is the former spouse of Ms. Melchionda and the father of MM(1) and MM(2), two

minor children.  Interpleader Counterclaim, ¶¶ 2-4, 12; Amended Answer, ¶ 2-4, 12.[5]  More specifically, at the time of his death, the Decedent was insured under the Policy for:  (a) basic life insurance benefits in the amount of $5,000 and supplemental or optional life insurance benefits in the amount of $925,000 (the "Life Insurance Benefits"); and (b) accidental death and dismemberment insurance benefits in the amount of $5,000 and supplemental or optional accidental death and dismemberment insurance benefits in the amount of $925,000 (the "AD&D Benefits") (the Life Insurance Benefits and AD&D Benefits are collectively referred to as the "Policy Benefits").  Interpleader Counterclaim, ¶ 12; Amended Answer, ¶ 12.

If a person insured under the Policy dies, "Proof of [his] death must be sent to [MetLife]" so that it may review and approve the life insurance benefits claim.  Exhibit A (Certificate at 49).  If a person insured under the Policy "sustain[s] an accidental injury that is the Direct and Sole Cause of [his death] … Proof of the accidental injury and [death] must be sent to [MetLife]" so that it may review and approve the AD&D benefits claim.  Exhibit A (Certificate at 56).  *See also* Exhibit A (Certificate at 65) (for life insurance benefits, when notice of the death of an insured person is given to MetLife, a "claim form will be sent to the beneficiary or beneficiaries of record.  The beneficiary or beneficiaries should complete the claim form and send it and Proof of the death to [MetLife] as instructed on the claim form.  When [MetLife] receive[s] the claim form and Proof, [it] will review the claim and, if [MetLife] approve[s] it, [it] will pay benefits subject to the terms and provisions of [the] certificate and the Group Policy") and Certificate at 66 (same for AD&D benefits, but also requiring that "Proof" for AD&D benefits be given "no later than 90 days after the date of [death]" or, if not, "as soon as is reasonably possible").

---

[5] Citations to MetLife's Interpleader Counterclaim (ECF Doc. 11) and Ms. Melchionda's Amended Answer (ECF Doc. 16) are provided where Ms. Melchionda has admitted the averment.  *See* Fed. R. Civ. P. 8(b)(6).

Per the Policy, proof means "Written evidence satisfactory to [MetLife] that a person has satisfied the conditions and requirements for any benefit described in [the] certificate." Exhibit A (Certificate at 36).  In other words, for both life insurance and AD&D benefits, MetLife must receive proof that an insured person actually died.  In addition, for AD&D benefits, MetLife must also receive proof that an insured person died as "a direct result of [an] accidental injury." Exhibit A (Certificate at 56).

  2. <u>The Decedent's Beneficiary Designation</u>

The Policy provides that an insured "may designate a Beneficiary" to receive any Policy benefits.  Exhibit A (Certificate at 67).  If MetLife approves a claim, then it will pay Policy benefits to a "surviving designated Beneficiary."  *Id.*

On June 26, 2013, the Decedent signed a *GIC* Life Insurance Beneficiary Designation Form naming Ms. Melchionda (his "Spouse") as "Beneficiary #1" (for "100%" of the Policy Benefits) and MM(1) (his "Child") as "Beneficiary #2" (also for "100%" of the Policy Benefits) (the "2013 Beneficiary Designation").[6]  Exhibit B; Interpleader Counterclaim, ¶ 13; Amended Answer, ¶ 13.

Neither the 2013 Beneficiary Designation nor the Policy expressly provide that "Beneficiary #2" will receive the Policy Benefits if "Beneficiary #1's" designation is revoked by operation of law (as opposed to her death).  Exhibit B.  The 2013 Beneficiary Designation also did not nominate Ms. Melchionda as "custodian for [MM(1)] under the Massachusetts Uniform

---

[6]MM(2) was born before June 26, 2013 (Complaint, ¶ 4, noting that MM(2) was born in 2012), but is not listed as a beneficiary on the 2013 Beneficiary Designation.  Exhibit B. However, as discussed below, in 2019, the Decedent agreed to "maintain his present life insurance policy" for the benefit of *both* his "minor children."  Exhibit L (MTD 104).

Transfers to Minors Act" so as to receive the Policy Benefits for a minor beneficiary.

Interpleader Counterclaim, ¶ 15; Amended Answer, ¶ 15.  *See* M.G.L. c. 201A, § 3.

3.     Ms. Melchionda Takes Eight Months To Submit The Decedent's Death Certificate And A Claim Form Requested By MetLife

The Decedent died on December 8, 2021.  MetLife was notified of his death on or about January 31, 2022.  Interpleader Counterclaim, ¶ 11; Amended Answer, ¶ 11.

By letter dated February 1, 2022, MetLife informed Ms. Melchionda that the "expected claim amount is $930,000" (*i.e.*, the "Life Insurance Benefits"), and asked her, as the surviving designated beneficiary, to complete and return a life insurance claim form and also send a copy of the Decedent's death certificate (as "proof" of his death) so that it could process the claim. Exhibit C (MTD 1-13).[7]  *See also* Exhibit A (Certificate at 65) (when notice of the death of an insured person is given to MetLife, a "claim form will be sent to the beneficiary or beneficiaries of record.  The beneficiary or beneficiaries should complete the claim form and send it and Proof of the death to [MetLife] as instructed on the claim form").

Having received no response to its February 1, 2022 letter, by letter dated March 17, 2022, MetLife again asked Ms. Melchionda to complete and return a life insurance claim form

---

[7]Ms. Melchionda's original Answer [Doc. 14] denied ¶¶ 16-19, 23-25, 28-30, and 32-36 of the Interpleader Counterclaim, which relate to correspondence and communications between Ms. Melchionda and MetLife.  By letter dated April 11, 2024, counsel for MetLife provided documents to counsel for Ms. Melchionda demonstrating that the denials in the original Answer (upon which her claim of non-responsiveness by MetLife are seemingly based) were not warranted based on the evidence per Rule 11(c).  In response, on April 19, 2024, Ms. Melchionda filed an Amended Answer [Doc. 16], which now properly admits ¶¶ 18, 23-25, 28-30, and 32-36 of the Interpleader Counterclaim, states she has "no recollection of receiving" the correspondence referenced in ¶¶ 17 and 19 of the Interpleader Counterclaim, and, for some unknown reason, still denies receiving the correspondence referenced in ¶ 16 of the Interpleader Counterclaim, even though that correspondence was provided to her counsel.  *See* Exhibits C and D (MTD 1-26).

and provide a death certificate so that it could process the claim.  Interpleader Counterclaim, ¶ 16; Exhibit D (MTD 14-26).

Having received no response to its February 1, 2022 and March 17, 2022 letters, MetLife contacted Ms. Melchionda again by letter dated April 18, 2022, and once more asked her to complete and return a life insurance claim form and provide a death certificate so that it could process the claim.  MetLife advised Ms. Melchionda that a "determination on the payment of the benefits cannot be made until all of the information necessary to review the claim had been received."  Interpleader Counterclaim, ¶ 17; Amended Answer, ¶ 17; Exhibit E (MTD 27-41).

Having received no response to its February 1, 2022, March 17, 2022, and April 18, 2022 letters, by letter dated May 20, 2022, MetLife yet again asked Ms. Melchionda to complete and return a life insurance claim form and provide a death certificate so that it could process the claim.  MetLife asked Ms. Melchionda to "provide the requested documents within" 30 days. Interpleader Counterclaim, ¶ 18; Amended Answer, ¶ 18; Exhibit F (MTD 42-54).

Having received no response to its February 1, 2022, March 17, 2022, April 18, 2022, and May 20, 2022 letters, by letter dated August 15, 2022, MetLife once more asked Ms. Melchionda to complete and return a life insurance claim form and provide a death certificate so that it could process the claim.  Interpleader Counterclaim, ¶ 18; Amended Answer, ¶ 18; Exhibit G (MTD 55-68).

Having received no response to its February 1, 2022, March 17, 2022, April 18, 2022, May 20, 2022, and August 15, 2022 letters, by letter dated September 14, 2022, MetLife for the sixth time since the Decedent's December 2021 death asked Ms. Melchionda to complete and return a life insurance claim form and provide a death certificate so that it could process the claim.  Interpleader Counterclaim, ¶ 18; Amended Answer, ¶ 18; Exhibit H (MTD 69-81).

After *six* written requests and almost *eight* months since the first request had been made, on September 26, 2022, Ms. Melchionda finally submitted a life insurance claim form and death certificate.  Interpleader Counterclaim, ¶ 20; Amended Answer, ¶ 20; Exhibit I (MTD 82-87).

*That no action on the claim beyond the multiple requests for the life insurance claim form and death certificate was undertaken from the date when MetLife was first notified of the Decedent's death (January 31, 2022) until September 26, 2022 is wholly the result of Ms. Melchionda's delay in submitting these requested documents.*

4.    The Claim

In her life insurance claim form, Ms. Melchionda asserts that she is the Decedent's "beneficiary" (and the mother of their children), but also reports she was divorced from the Decedent.  Exhibit I (MTD 84).  She also indicates that she wants MetLife to place the funds in a MetLife interest-bearing Total Control Account, rather than send her a check.  Exhibit I (MTD 85).  The Decedent's death certificate, submitted with the life insurance claim form, indicates that the Decedent's death was caused by a pulmonary embolism following surgery on his left leg.  Exhibit I (MTD 83).

The information set forth in these documents submitted to MetLife in September 2022 raised several issues that needed to be resolved before any Policy Benefits could be paid.  First, because Ms. Melchionda reported that she had been divorced from the Decedent, a determination needed to be made as to whether her beneficiary designation was revoked by the divorce.  *See* G.L. c. 190B, § 2-804(b).  Second, based on information in the death certificate, MetLife needed to resolve whether the Decedent's death "was a direct result of [an] accidental injury, independent of other causes" for potential AD&D Benefits (notwithstanding that the death

certificate was submitted more than 90 days after the Decedent's December 2021 death and most

certainly was not submitted as soon as reasonably possible).  *See* Exhibit A (Certificate at 56).

    5.    <u>The Divorce</u>

As to the divorce, G.L. c. 190B, § 2-804(b) states:

> Except as provided by the express terms of a governing instrument, a court order,
> or a contract relating to the division of the marital estate made between the
> divorced individuals before or after the marriage, divorce, or annulment, the
> divorce or annulment of a marriage:  (1) revokes any revocable (i) disposition or
> appointment of property made by a divorced individual to the individual's former
> spouse in a governing instrument ….[8]

This statutory provision extends to life insurance policies and beneficiary designations.

*American Family Life Assurance Co. of Columbus v. Parker*, 488 Mass. 801, 806 (2022).  As

such, "[u]nless one of the statute's express exceptions applies, the beneficiary designation to …

the divorced spouse … would be revoked as a matter of law." *Id.* at 810.  *See also Sevelitte v.*

*Guardian Life Ins. Co. of Am.*, 55 F.4th 71, 75 (1st Cir. 2022) (under Massachusetts law "divorce

typically revokes the beneficiary status of an ex-spouse").  Under Massachusetts law, the so-

called "contract exception provides that divorcing spouses can retain the beneficiary designation

via a contract relating to the division of the marital estate (such as a divorce agreement)." *Id.* at

76 (internal quotes omitted).

    As such, by letter dated October 11, 2022, MetLife requested a copy of the divorce

decree and any marital property settlement agreement between the Decedent and Ms.

Melchionda in order to assess whether the 2013 Beneficiary Designation was revoked as a matter

---

[8]There is no provision in the Policy (*i.e.*, the "governing instrument") providing that a beneficiary designation is *not* revoked by a divorce.  Interpleader Counterclaim, ¶ 8; Amended Answer, ¶ 8.

of law as to Ms. Melchionda, the divorced spouse.  Interpleader Counterclaim, ¶ 23; Amended Answer, ¶ 23; Exhibit J (MTD 88).

Having received no response to its October 11, 2022 correspondence, by letter dated February 20, 2023, MetLife again requested a copy of the divorce decree and any marital property settlement agreement.  Interpleader Counterclaim, ¶ 24; Amended Answer, ¶ 24; Exhibit K (MTD 89).

More than *six* months after these documents were first requested, by letter dated April 16, 2023, Ms. Melchionda provided a copy of a May 20, 2019 "Separation Agreement" (but not the divorce decree), and asserted payment should be made to her as "beneficiary on [the Decedent's] policy."  Interpleader Counterclaim, ¶ 25; Amended Answer, ¶ 25; Exhibit L (MTD 90-110).  In other words, Ms. Melchionda was (seemingly) claiming that her beneficiary status was *not* revoked by her divorce.

The Separation Agreement provides that the Decedent "shall maintain his present life insurance policy or the equivalent thereto, naming [Ms. Melchionda] as *Trustee* for the minor children until the minor children are emancipated.  (Maximum $500,000.00 death benefit)" (emphasis added).[9]  Exhibit L (MTD 104); Interpleader Counterclaim, ¶ 26; Amended Answer, ¶ 26.  The Separation Agreement does not expressly state that Ms. Melchionda will remain as the *beneficiary* of the Policy.  Interpleader Counterclaim, ¶ 27.  The Separation Agreement also suggests that MM(2) – one of the two minor child*ren* identified in the document – may have a claim to a portion of the Policy Benefits.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

---

[9]The Separation Agreement is unsigned, but appears to have been initialed by the Decedent and Ms. Melchionda.  Exhibit L (MTD 101).

By letter dated May 16, 2023, MetLife again asked Ms. Melchionda for a copy of the divorce decree and also asked whether a trust had been established for MM(1) and MM(2), the minor children.  Interpleader Counterclaim, ¶ 28; Amended Answer, ¶ 28; Exhibit M (MTD 111-116).

6.     The AD&D Claim

As noted, the Decedent's death certificate, finally submitted by Ms. Melchionda in late September 2022, indicates that the Decedent's death was caused by a pulmonary embolism following surgery on his left leg.[10]  Exhibit I (MTD 83).  Notwithstanding that the death certificate was submitted more than 90 days after the Decedent's December 2021 death and most certainly was not submitted as soon as reasonably possible (*see* Exhibit A [Certificate at 56]), this information caused MetLife to undertake a review of whether the Decedent's death "was a direct result of [an] accidental injury, independent of other causes."  Exhibit A (Certificate at 56).

---

[10]In June 2023, Ms. Melchionda asserted that the Decedent had "surgery following an accident," but did not provide any details about the accident.  Exhibit O (MTD 119).  In August 2023, her counsel asserted that the Decedent "was killed on December 8, 2021 when he fell from a ladder."  Exhibit R (MTD 155).  Even assuming the surgery was necessitated by a fall and that the pulmonary embolism was related to the surgery, Ms. Melchionda still had to prove, *inter alia*, "that a medical condition caused by … a fall or other accident was the direct cause of decedent's death independent of any preceding medical condition; that is the accident as opposed to the preceding medical condition, was the dominant cause of death."  *Leonard v. GE Co.*, 199 F.Supp.3d 400, 408 (D. Mass. 2016).  This determination can be a bit complicated when a death is caused by a pulmonary embolism, and MetLife reasonably requested medical records before making its determination.  *See Sellers v. Zurich Am. Ins. Co.,* 627 F.3d 627 (7th Cir. 2010); *Jones v. Life Ins. Co.*, 2017 U.S. Dist. LEXIS 199871 (M.D. Fla. Nov. 15, 2017); *Schar v. Hartford Life Ins. Co.*, 242 F.Supp.2d 708 (N.D. Cal. 2003); *McAuley v. Fed. Ins. Co.*, 2009 U.S. Dist. LEXIS 52899 (E.D. Mo. Mar. 31, 2009); *Hernandez v. Hartford Life & Accident Ins. Co.*, 2010 U.S. Dist. LEXIS 151352 (E.D. Mich. Sept. 22, 2010).  Per medical records sent to MetLife on January 9, 2024, the Decedent (age 51) had been transported to the emergency department at Good Samaritan Medical Center on December 8, 2021, after his heart stopped.  It was reported he had fallen from a ladder on December 1, 2021, had subsequent surgery on his left leg, and was discharged on December 3, 2021.  He also had a family history of early cardiac death.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

As such, MetLife asked Ms. Melchionda for certain of the Decedent's medical records. Alternatively, it asked her to sign a MetLife medical authorization form if she was unable to obtain the medical records so that it could do so, but cautioned that some providers do not accept MetLife's medical authorization form and, if the Decedent's provider did not, advised her to obtain and sign a medical authorization acceptable to the Decedent's medical provider. Interpleader Counterclaim, ¶ 29; Amended Answer, ¶ 29; Exhibit M (MTD 111-116).

       7.     <u>Ms. Melchionda's Inconsistent Positions</u>

By letter dated May 16, 2023, MetLife advised Ms. Melchionda that it appeared *MM(1)* was the beneficiary of the Life Insurance Benefits, but noted that it could not make direct payment to him since he was a minor.  As such, it further informed Ms. Melchionda that either: (a) someone had to be appointed by a court as legal guardian for his property or estate to receive payment on MM(1)'s behalf; or (b) the funds could be deposited into an interest-bearing "Minor on Deposit Account" until MM(1) "reaches the age of majority" in September 2024.  MetLife noted that the "fact that a minor child resides with a parent does not make that parent a legal guardian," and that, while such "parent is the *custodial* guardian, … MetLife is unable to release any funds until a guardian of the property or estate of the minor is appointed by the court."  This requirement is intended to "make[] certain that the proceeds designated to the minor are used for the benefit of the minor, as the insured intended."  (The same would be true for MM(2).) Interpleader Counterclaim, ¶ 30; Amended Answer, ¶ 30; Exhibit N (MTD 117-118) (emphasis in original).  No legal guardian for the property or estate of MM(1) or MM(2) has been appointed, and, therefore, no such individual has made a claim for the Policy Benefits. Interpleader Counterclaim, ¶ 31; Amended Answer, ¶ 31.

In response to MetLife's letter, by correspondence dated June 23, 2023, Ms. Melchionda maintained that the Policy Benefits were payable to *her* as the Decedent's *beneficiary*, rather to one or more of the minor children.  Interpleader Counterclaim, ¶ 32; Amended Answer, ¶ 32; Exhibit O (MTD 119-146).  Shortly thereafter, by email dated July 6, 2023, Ms. Melchionda changed course and asserted for the first time that the Policy Benefits should be paid to the *Decedent's estate*, and would not be put in any trust for the minor children unless she chose to do so.  Interpleader Counterclaim, ¶ 33; Amended Answer, ¶ 33; Exhibit P (MTD 147-148).

By letter to Ms. Melchionda dated July 18, 2023, MetLife noted that the Decedent's estate is not a designated beneficiary, and therefore it could not pay the Policy Benefits to the estate as she had demanded.[11]  MetLife also stated it was unclear whether the Separation Agreement required the Decedent to designate both "minor children as beneficiaries in trust of the policy proceeds at issue here" and whether she, MM(1), and/or MM(2) were the proper recipients of the Policy Benefits.  Interpleader Counterclaim, ¶ 34; Amended Answer, ¶ 34; Exhibit Q (MTD 150-151).

MetLife also advised Ms. Melchionda the Decedent's medical provider would not accept MetLife's medical authorization form and requested that she sign the *provider's* medical authorization form (which was attached) so that MetLife could obtain the records necessary "to determine if the loss is an eligible Covered Loss for Accidental Death coverage under the terms of the group policy."  Interpleader Counterclaim, ¶ 34; Amended Answer, ¶ 34; Exhibit Q (MTD 150-151).

---

[11]Under the Policy, MetLife may pay the Decedent's estate only if there is no beneficiary designated or no surviving designated beneficiary.  Exhibit A (Certificate at 67).  However, even if Ms. Melchionda is not a surviving designated beneficiary given her divorce from the Decedent, MM(1) is a surviving designated beneficiary.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

Instead of doing so, by letter from her legal counsel dated August 21, 2023, Ms. Melchionda: (a) shifted gears again and declared *for the first time* she was *not* entitled to the Policy Benefits because her designation as the Decedent's beneficiary was *revoked* by her divorce; (b) asserted that MM(2) had no right to any of the Policy Benefits; and (c) demanded that "all monies due and payable under the policy" (including the AD&D Benefits) be paid directly to *her* "as the parent and guardian of [MM(1)]." Interpleader Counterclaim, ¶¶ 30, 35; Amended Answer, ¶¶ 30, 35; Exhibit R (MTD 155-156). *See* Complaint ¶¶ 8-9 ("Pursuant to the provisions of M.G.L. Chapter 190B Section 2-804, the beneficiary designation to Laurie Melchondia [sic] was revoked upon her divorce from the Decedent" and "[t]he result of the foregoing is that [MM(1)] is the 100% beneficiary of the Decedent's policy").

However, neither Ms. Melchionda nor her legal counsel provided a court order appointing her (or anyone) as guardian of the property or estate of MM(1), as she was advised in May 2023 was necessary before payment could be made to her for the benefit of a minor child (because, as she now admits, there was no such appointment – Amended Answer, ¶ 31). As such, MetLife could not make the demanded payment to her on behalf of MM(1) (even assuming MM(2) has no right to any portion of the Policy Benefits). Moreover, with respect to the AD&D Benefits, Ms. Melchionda had not yet provided the medical authorization previously requested by MetLife so that it could obtain the Decedent's medical records and complete its review of her claim for AD&D Benefits. Interpleader Counterclaim, ¶¶ 30, 35; Amended Answer, ¶¶ 30, 35; Exhibit R (MTD 155-156). *See also* Exhibit N (MTD 117-118).

Upon receipt of the August 21, 2023 demand letter, MetLife representatives reached out to Ms. Melchionda's legal counsel to discuss the letter and status of the claim, noting its prior correspondence explaining its position and the additional information still needed. *See* Exhibit

V.  MetLife also sent a follow-up letter dated September 7, 2023 to Ms. Melchionda, again asking her to sign the medical authorization required by the Decedent's medical provider so that MetLife could obtain the medical records necessary to review the claim for AD&D Benefits. Interpleader Counterclaim, ¶ 36; Amended Answer, ¶ 36; Exhibit S (MTD 157-159).

On or about September 15, 2023, Ms. Melchionda finally mailed the medical authorization form necessary for MetLife to obtain the Decedent's medical records.  Exhibit T (MTD 160-161, 166).  By letter dated October 11, 2023, MetLife requested medical records from the Decedent's provider.  Exhibit U (MTD 167).

8.    The Premature Lawsuit

On or about December 18, 2023, before MetLife had even received the Decedent's medical records, and notwithstanding no one had been appointed as guardian of the property or estate of MM(1), Ms. Melchionda commenced this action "on behalf of [MM(1)]," asserting, *inter alia*, that she "is entitled to payment of the sum of two million dollars" from MetLife "as parent and guardian" of MM(1).  Interpleader Counterclaim, ¶ 37; Amended Answer, ¶ 37.

On January 9, 2024, medical records were finally sent and thereafter received by MetLife from the Decedent's medical provider and, upon review, MetLife has determined that AD&D Benefits are payable.  Interpleader Counterclaim, ¶ 38; Amended Answer, ¶ 38; Exhibit U (MTD 167).  However, MetLife remains unsure to whom the Policy Benefits are payable, including whether any part of the Policy Benefits are payable to MM(2).

Moreover, even assuming the Policy Benefits are solely payable to MM(1) (and not in whole or part to MM(2) or Ms. Melchionda), MetLife still cannot make payment unless and until a guardian for the property or estate of MM(1) has been appointed and has made a claim for the

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

Policy Benefits.  As noted, although the Court ordered Ms. Melchionda to file a motion to

appoint such a guardian with the Court by April 22, 2024 (ECF Doc. 15), she has failed to do so.

### ARGUMENT

1.   <u>Breach of Contract (Count One)</u>

Ms. Melchionda claims that MetLife breached the terms of the Policy by failing to pay

*her* "two million dollars" in life insurance benefits on behalf of her 17-year-old son (MM(1)).

While MetLife does not dispute that the Policy Benefits are payable to someone, there is

uncertainty about whether the Policy Benefits are payable, in whole or in part, to Ms.

Melchionda, MM(1), and/or MM(2), which may expose MetLife to multiple claims and

duplicative liability.  Therefore, MetLife has properly asserted its Interpleader Counterclaim and,

in connection with the same, sought to deposit the Policy Benefits with the Court.  *See Equitable*

*Life Assur. Society of the U.S. v. Porter-Englehart*, 867 F.2d 79, 84 (1st Cir. 1989).

In such circumstance, Ms. Melchionda's breach of contract claim should be dismissed.

*See Discover Bank v. Greenwood House Home for the Jewish Aged*, 2023 U.S. Dist. LEXIS

33544, **20-21 (D.N.J. Feb. 28, 2023) (dismissing conversion claim where interpleader action

was brought to determine who was the appropriate recipient of the funds at issue because a

stakeholder's "failure to choose between the adverse claimants … cannot itself be a breach of a

legal duty"); *Bankers Life & Cas. Co. v. Burdette*, 2020 U.S. Dist. LEXIS 162586 (E.D.N.C.

Sept. 4, 2020) (dismissing breach of contract claim brought against interpleading insurance

company where the breach of contract claim was not independent of the interpleaded

controversy); *Pessoa v. Invesco Inv. Servs.*, 2019 U.S. Dist. LEXIS 86244 (M.D. Fla. May 3,

2019) (dismissing breach of contract claim after interpleader counterclaim was filed).

Moreover, as was explained to Ms. Melchionda *before* she commenced this action, MetLife cannot pay the Policy Benefits directly to MM(1) and/or MM(2), or to anyone else (even a parent) unless and until a guardian for the property or estate of the minor child has been appointed and made a claim for the Policy Benefits.  Ms. Melchionda concedes that no such guardian has been appointed and, for some unknown reason, has disregarded the Court's order that she file a motion to appoint a guardian.[12]  As such, her breach of contract claim fails.

    2.    <u>Unfair And Deceptive Business Practices (Count Two)</u>

In Count Two, Ms. Melchionda merely asserts in conclusory fashion that MetLife "has acted in bad faith and engaged in unfair claims settlement practices."  Complaint, ¶ 23.  *See Allstate Ins. v. Fougere*, 450 F.Supp.3d 10, 19 (D. Mass. 2020) (bare assertion that insurer "engaged in unfair and deceptive practices" lacks "sufficient specificity to enable [insurer] to defend against the claim").

Assuming she can overcome this pleading defect, "*Massachusetts General Laws, chapter 93A, section 2(a)* prohibits unfair settlement practices by insurers….  Unfair or deceptive acts or practices in the business of insurance are specifically defined in chapter 176D, § 3…."  *Vermont Mut. Ins. Co. v. Toland*, 2022 U.S. Dist. LEXIS 174579, *16 (D. Mass. Sept. 27, 2022) (internal quotes omitted).  *See River Farm Realty Trust v. Farm Family Cas. Ins. Co.*, 943 F.3d 27, 36-38 (1st Cir. 2019) ("The pertinent state law, *chapter 176D, section 3* states that unfair claim

---

[12]This situation requires a most cautious approach.  *See Samson v. Unum Life Ins. Co. of America*, 2020 Miss. LEXIS 106 (Miss. May 7, 2020) (court-appointed guardian *ad litem* of minor children allowed to maintain action against insurer to recover life insurance proceeds after their mother misappropriated funds made payable to her as "guardian" of minor children, notwithstanding mother had been appointed as a guardian by a court); *John Hancock Life Ins. Co. (U.S.A.) v. Jacobs*, 2015 U.S. Dist. LEXIS 101574 (D. Nev. June 25, 2015) (finding mother could not represent minor child because of potential conflict such that someone else had to be appointed as guardian *ad litem* for minor child).

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

settlement practices constitute unfair methods of competition and unfair or deceptive acts or practices in the business of insurance…. The central inquiry under *chapter 176D* is the reasonableness of the insurer's actions…. Ordinarily, mere negligence by an insurer does not represent an unfair or deceptive act. It may be that evidence of bad faith is also required.") (internal quotes omitted). Importantly, the "boundaries of what are viable claims under *chapter 176D* are matters of law for the court to decide." *Id.* at 36.

Although not entirely clear (and the Complaint does not even reference M.G.L. c. 176D), the basis for Ms. Melchionda's assertion that MetLife "has acted in bad faith and engaged in unfair claims settlement practices" *seems* to be that it: (a) refused to pay Ms. Melchionda the Policy Benefits due MM(1); (b) failed to respond to "numerous applications and appeals" by Ms. Melchionda for such payment, including her August 21, 2023 "demand letter [sent] pursuant to … M.G.L. Chapter 93A"; and (c) engaged in unspecified "delaying" actions. Complaint, ¶¶ 11-13, 22, 26-27.

With respect to (a) (failure to pay), MetLife was contractually entitled to request proof of the Decedent's death and, after such proof was received in the form of the Decedent's death certificate (albeit eight months after it was first requested), has not disputed that the Life Insurance Benefits are payable to *someone*. Exhibit A (Certificate at 49). *See* https://www.mass.gov/news/massachusetts-division-of-insurance-offers-life-insurance-tips-this-awareness-month ("It is the responsibility of the beneficiary to notify the insurance company of your death, which is why it is important to keep your policy information safe and accessible, and keep your beneficiary fully informed. *A death certificate or other legal document will be required to verify your death.*") (emphasis added).

Likewise, in connection with a claim for AD&D Benefits, MetLife was contractually entitled to request proof that the Decedent's death was the direct result of an accidental injury, and, after such proof was received in the form of the Decedent's medical records in February 2024, has not disputed that AD&D Benefits are payable to *someone*.  *See Burns v. Combined Ins. Co.*, 373 N.E.2d 1189, 1192-93 (Mass. App. 1978) ("Proof of loss requires more than mere notice to the insurance company that a claim is being made…. If the initial proof is inconclusive…. We have long recognized that an insurer may request further proof").  *See also Washington v. Metropolitan Life Ins. Co.*, 372 Mass. 714 (1977).

The Policy Benefits have not been paid yet for two reasons.  First, as noted above, there may be competing claims for the Policy Benefits among and between Ms. Melchionda, MM(1), and MM(2), which may expose MetLife to multiple claims and duplicative liability when the minor children reach the age of majority and which, therefore, has caused MetLife to seek to deposit the Policy Benefits with the Court.  Second, as noted above, even if the Policy Benefits are determined to be undisputably payable to MM(1) alone (or even MM(1) and MM(2)), MetLife cannot pay the Policy Benefits to MM(1) unless and until a guardian for the property or estate of MM(1) has been appointed and made a claim for the Policy Benefits.  *See* https://www.mass.gov/info-details/life-insurance-basics ("*Most insurance companies will not pay life insurance proceeds to minors*.  If any of your children are minors, one of your options is to designate a trust as the beneficiary, with an individual or institution to use the funds for the welfare of your children. Trusts can be set up by your family attorney.  Another option is to designate two individuals whom you trust as beneficiaries, who will make joint decisions about the care and welfare of your children.") (emphasis added).

In any event, a "mere breach of contract does not constitute an unfair or deceptive trade practice under Chapter 93A." *Leet v. Cellco Partnership*, 2007 U.S. Dist. LEXIS 82869, *4 (D. Mass. Oct. 19, 2007). *See Kamakura, LLC v. Greater N.Y. Mut. Ins. Co.*, 525 F.Supp.3d 273 (D. Mass. 2021) ("In cases involving insurance disputes, the presence of extortionate tactics and the absence of good faith generally characterize actions under Chapters 93A and 176D"); *Cambridge Pub. Health Comm'n v. Commerce Ins. Co.*, 2020 Mass. App. Div. LEXIS 23, *12 (Mass. App. May 26, 2020) ("A violation of G.L. c. 93A requires evidence of something more than a breach of contract, rising to the level of intentional bad faith, calculated and knowing deception, extortionate tactics, or other similarly egregious conduct").

With respect to (b) (alleged failure to respond), as the Statement of Facts makes clear, MetLife has always responded to Ms. Melchionda in a timely manner. The reality is that *she* has typically not responded to MetLife in a timely manner. As to the 93A demand letter, MetLife *did* communicate with Ms. Melchionda's counsel concerning the letter following its receipt of the same. *See* Exhibit V. Moreover, MetLife had already made clear that it could not make payment of the Life Insurance Benefits to a minor child unless and until a guardian for the property or estate of the minor child has been appointed and made a claim for the Policy Benefits. Also, both before and after the 93A demand letter was sent, MetLife advised that it still needed to obtain and review the Decedent's medical records to determine whether AD&D Benefits were payable, and that the holdup was Ms. Melchionda's failure to provide either the medical records or a signed medical authorization satisfactory to the provider to allow MetLife to obtain the records.

In any event, "a failure to respond to a [Chapter 93A] demand letter is not itself an unfair or deceptive act or practice." *Leet v. Cellco Partnership*, 2007 U.S. Dist. LEXIS 82869, *4 (D.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

20

Mass. Oct. 19, 2007).  Moreover, because "there is no violation of Chapter 93A, [MetLife's] allegedly inadequate response to plaintiff's demand letters is irrelevant."  *Id.  See also Gould v. Bank of N.Y. Mellon*, 123 F.Supp.3d 197 (D. Mass. 2015) ("A failure to respond to a demand letter does not in and of itself constitute a valid claim under Chapter 93A"); *Dawe v. Capital One Bank*, 2007 U.S. Dist. LEXIS 82870, *4 (n.2) (D. Mass. Oct. 24, 2007) ("To the extent that plaintiff alleges a violation of Chapter 93A based on defendant's response to plaintiff's demand letter, that allegation is subject to dismissal for failure to state a claim because a failure to respond or an inadequate response to a demand letter is not itself a violation of Chapter 93A").

With respect to (c) (alleged delay), as the Statement of Facts also makes clear, MetLife did not engage in any delaying tactics.  If anything, the length of time taken to decide the claim for the Life Insurance and AD&D Benefits is primarily due to Ms. Melchionda's failure to timely respond to MetLife's more-than-reasonable requests and her ever-shifting positions as to whom the Policy Benefits are payable.

Simply stated, there is no conduct here on the part of MetLife even remotely "rising to the level of intentional bad faith, calculated and knowing deception, extortionate tactics, or other similarly egregious conduct."  To the contrary, MetLife has conducted a reasonable, timely, and diligent investigation of the claim under the circumstances, even excusing the requirement that proof that the Decedent's death was the direct result of an accidental injury be provided no later than 90 days after the date of death or as soon as reasonably possible.

## CONCLUSION

For the reasons set forth herein, summary judgment should be granted in favor of MetLife with respect to Count One and Count Two of the Complaint.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

Respectfully submitted,

METROPOLITAN LIFE INSURANCE
COMPANY

By Its Attorneys,
SULLOWAY & HOLLIS, P.L.L.C.

DATED:  May 3, 2024                    By:___/s/ William D. Pandolph, Esq._____
                                                    William D. Pandolph, Esq. BBO #625133
                                                    9 Capitol Street
                                                    Concord, NH 03301
                                                    (603) 223-2862
                                                    email:  wpandolph@sulloway.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 3, 2024.

DATED:  May 3, 2024                    By:___/s/ William D. Pandolph, Esq._____
                                                    William D. Pandolph, Esq.

Law Offices of
Sulloway & Hollis, P.L.L.C.
Concord, N.H. 03301

22